**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW HAMPSHIRE**

|  |  |
|---|---|
| JEFFREY TODD HARRINGTON ) <br> BY ALLIED EASTERN INDEMNITY CO., ) <br> AS SUBROGEE ) <br>          Plaintiff, ) <br> v. ) <br> ) <br> SCRANTON MANUFACTURING ) <br> COMPANY, INC., d/b/a     NEW WAY ) <br> REFUSE TRUCKS ) <br> ) <br>          Defendant. ) <br> ) | Docket No. 22-CV-00456 |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Jeffrey Todd Harrington, by and for the use of Allied Eastern Indemnity Co. ("Plaintiff"),

hereby alleges and says the following:

**PARTIES**

1.      Jeffrey Harrington is an adult individual residing at 26 Sunrise Drive, Shelburne,

NH 03581.

2.      Defendant, Scranton Manufacturing Company, Inc. d/b/a New Way Refuse Trucks

(hereinafter "Defendant" or "Scranton Manufacturing") is an Iowa corporation with its principal

place of business located at 101 State Street, Scranton, Iowa 51462.

3.      Defendant is a company engaged in the business of manufacturing vehicles, truck

bodies, and related equipment for use in trash/refuse hauling which it offers for sale and/or

distributes throughout the United States including to businesses located in the State of New

Hampshire.

4.     Defendant is the manufacturer, seller and distributor of a Model 20 RL Viper dumpster/compactor assembly that was mounted onto a truck (hereinafter the "Subject Product" or "dumpster/compactor assembly") which was sold by Defendant with the intention that it would be sold and/or distributed and used in the State of New Hampshire.

5.     At all times relevant hereto, Jeffrey Harrington was employed by Milan Container, a trash/refuse disposal company with its principal place of business at 9 Industrial Park Dr., Berlin, New Hampshire 03570.

6.     At all times relevant hereto, Milan Container was the owner of the Subject Product.

7.     At all times relevant hereto, Milan Container and its sister company, New England Vaults and Monuments, were insured for workers compensation by Allied Eastern Indemnity Company, a Pennsylvania Corporation, with its principal place of business located in Lancaster, Pennsylvania.

8.     As set forth more fully below, on November 3, 2020, Jeffrey Harrington was severely injured while working for Milan Container as a trash/refuse hauler, within the municipality of West Milan, New Hampshire, as the result of the defective condition of the Subject Product.

9.     Pursuant to New Hampshire law, RSA 281-A: 13 III(b), Allied Eastern Indemnity Company initiates this action in the name of Jeffrey Harrington, as subrogee of the rights of Jeffrey Harrington for all of the injuries and damages sustained.

## JURISDICTION AND VENUE

10.     The acts and/or omissions giving rise to this cause of action occurred within the state of New Hampshire.

11.     Jurisdiction is based upon 28 U.S. Code § 1332(a)(1) in that this action involves a controversy between citizens of different states and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

12.     Venue is proper in this district based upon 28 U.S.C. 1391(a) in that the District of New Hampshire is a location where Defendant is subject to personal jurisdiction.

### FACTS

13.     On the morning of November 3, 2020, Jeffrey Harrington was standing on the back of the Subject Product in an area designated for refuse workers to stand and was holding onto a designated grab handle in order to steady himself when suddenly and without warning the winch on the truck was inadvertently activated, causing the hook on the end of the winch line to trap, pinch, and crush Jeffrey Harrington's dominant right hand against the Subject Product truck as the truck was moving on the roadway, resulting in serious and permanent injuries.

14.     As a result of the forgoing incident, Jeffrey Harrington sustained severe and permanent crush injuries to his right hand and fingers, including but not limited to: (1) multiple fractures, (2) muscle and ligament dismemberment requiring surgical repair, (3) surgical partial amputation of the right small finger, and (4) permanent partial loss of use and function in his right hand.

15.     As a result of the foregoing incident, Jeffrey Harrington has undergone medical treatment for his injuries, has incurred medical bills, and will incur additional medical bills in the future for the treatment of his injuries.

16.     As a result of the foregoing incident, Jeffrey Harrington was disabled from work, has sustained lost wages, and will continue to be disabled in the future and will incur additional lost wages in the future and a loss of future earning capacity.

17.     As a result of the foregoing incident, Jeffrey Harrington has endured extreme pain and suffering and may continue to experience pain and suffering in the future.

18.     As a result of the foregoing incident, Jeffrey Harrington has suffered permanent deformity and loss of use.

19.     As a result of the foregoing incident, Jeffrey Harrington suffered a loss of life's enjoyment and may suffer further loss of life enjoyment in the future.

## COUNT I – NEGLIGENCE

20.     Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though set forth fully herein at length.

21.     Defendant owed a duty to Jeffrey Harrington, to design, manufacture, and sell the Subject Product in a condition that is safe for use and that eliminates unnecessary risk from the product's use.

22.     Defendant knew or should have known at the time it designed, manufactured, and sold the Subject Product that its design was not safe for use and subjected users to a risk of injury due to the proximity of the winch activation lever to the rider's body during normal use of the Subject Product on the roadway.

23.     The injuries to Jeffrey Harrington were caused by and resulted from the negligent, careless, and/or reckless acts and/or omissions of Defendant, by and through its agents, servants, representatives, employees, and/or subcontractors acting within the course and scope of their employment as follows:

      a.  designing, manufacturing, and selling a dumpster/compactor assembly with a winch activation lever in dangerously close proximity to the rider;

      b.  designing, manufacturing, and selling a dumpster/compactor assembly with a winch activation lever positioned in a manner likely to be inadvertently

triggered into activating the winch due to the rider's forced proximity and the normal motion of the Product while traveling on the roadway;

c.  designing, manufacturing, and selling a dumpster/compactor assembly without a designated location and fixture to safely secure a winch hook while the Product is in motion;

d.  designing, manufacturing, and selling the dumpster/compactor assembly without sufficiently guarding the winch activation handle to prevent inadvertent activation during normal use;

e.  failing to provide sufficient warnings and instructions concerning the placement of the winch hook during travel on the roadway;

f.  failing to provide sufficient warnings and instructions concerning the risk of serious injury due to the placement of the winch activation lever and its winch lever's susceptibility to being inadvertently activated due to a change in a rider's body position; and

g.  failing to provide any and all of the aforementioned instructions and/or warnings in a visible location, accessible and readable by all operators and riders.

24.     As a direct and proximate result of the aforementioned actions and/or omissions of Defendant, Jeffrey Harrington suffered the injuries and damages set forth more fully above.

**WHEREFORE**, Plaintiff demands judgment against Defendant for the aforementioned damages together with costs, interest, and reasonable attorney's fees, delay damages, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT II – STRICT LIABILITY

25.     Plaintiff repeats the allegations set forth above as though they were set forth fully at length herein.

26.     The Subject Product was designed, manufactured, and sold by Defendant in a defective condition that was unreasonably dangerous to its users in that the placement of the winch activation lever on the Subject Product allowed for and was likely to result in accidental

and inadvertent activation of the winch during the normal and anticipated use of the Subject Product and thereby cause injury to persons working on or near the Subject Product.

27.     The Subject Product was designed, manufactured, and sold by Defendant in a defective condition that was unreasonably dangerous to its users in that the winch activation lever was left unguarded, with no barrier between a working rider on the back of the truck and the lever resulting in accidental and inadvertent activation of the winch during the normal and anticipated use of the Subject Product and thereby cause injury to persons working on or near the Subject Product.

28.     The Subject Product was designed, manufactured, and sold by Defendant in a defective condition that was unreasonably dangerous to its users in that there was no mechanism provided to deactivate or disable the winch lever while the Subject Product was traveling on the roadway such that the winch could not be triggered with inadvertent contact.

29.     The Subject Product was designed, manufactured, and sold by Defendant in a defective condition that was unreasonably dangerous to its users in that no readily accessible location was provided to effectively store the winch hook out of harm's way when not in use such that it was likely to cause injury to persons working on or near the Subject Product.

30.     The Subject Product was designed, manufactured, and sold by Defendant in a defective condition that was unreasonably dangerous to its users in that Defendant failed to provide sufficient warnings and instructions concerning the risk and potential consequences of inadvertent contact with the winch activation lever during normal use of the Subject Product on the roadway.

31.     The Subject Product was designed, manufactured, and sold by Defendant in a defective condition that was unreasonably dangerous to its users in that Defendant failed to

6

provide sufficient warnings and instructions concerning how and/or where to stow the winch

hook when the Subject Product is traveling on the roadway and concerning the risk of serious

injury if the winch hook is placed on a handle or other location in close proximity to a user while

traveling on the roadway.

32.     The unreasonably dangerous conditions of the Subject Product existed when

Defendant sold and/or distributed the Subject Product and at the time of Jeffrey Harrington's

injury without substantial change in the condition of the product with respect to the defect at

issue.

33.     The purpose and manner of Jeffrey Harrington's use of the Subject Product was

intended and reasonably foreseeable by Defendant.

34.     The defective conditions described above directly and proximately caused severe

injuries and damages to Jeffrey Harrington as described more fully above.

**WHEREFORE**, Plaintiff demands judgment against Defendant for the aforementioned

damages together with costs, interest, and reasonable attorney's fees, delay damages, and for such

other relief as this Honorable Court shall deem appropriate under the circumstances.

### COUNT III – BREACH OF IMPLIED WARRANTIES

35.     Plaintiff repeats the allegations set forth above as though they were set forth fully

at length herein.

36.     Defendant impliedly warranted to its customers and to foreseeable users of the

Subject Product that it was safe, merchantable, and fit for ordinary and foreseeable uses and

purposes.

37.     Jeffrey Harrington relied on such warranties.

38.     Defendant breached its warranties to Jeffrey Harrington when it designed, manufactured, inspected, tested, marketed, distributed, and/or sold the Subject Product with the knowledge and that it was not reasonably safe for such intended purposes.

39.     As a direct and proximate result of Defendant's breach of implied warranties, Jeffrey Harrington was caused to suffer and continues to suffer the injuries and damages described above.

**WHEREFORE**, Plaintiff demands judgment against Defendant for the aforementioned damages together with costs, interest and reasonable attorney's fees, delay damages and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury on all counts and issues so triable.

JEFFREY TODD HARRINGTON
 BY ALLIED EASTERN INDEMNITY CO.
AS SUBROGEE

By his attorneys,

RATH, YOUNG AND PIGNATELLI, P.C.
One Capital Plaza
Concord, New Hampshire 03302-1500
(603) 226-2600
(603) 226-2700 (fax)

Date:   November 3, 2022          */s/ Michael K. O'Neil*
                                   Jamie N. Hage (NH Bar No. 1054)
                                   Michael K. O'Neil (NH Bar No. 21198)
                                   jnh@rathlaw.com
                                   mko@rathlaw.com

                                   and

DEVINE TIMONEY LAW GROUP
Veva 14, Suite 404
1777 Parkway West
Blue Bell, Pennsylvania 19422
(610) 400-1970
(610) 850-9994(fax)

Patrick C. Timoney*
Janelle Fulton*
*Pro hac Vice applications forthcoming